**LAW OFFICE OF ROGER W. FRAZIER**
Roger W. Frazier
2525 East Broadway Blvd., Suite 200
Tucson, Arizona 85716
Tel:  (520) 882-4294
Fax:  (520) 882-2853
Ariz. Bar No. 012146
roger@frazierlawaz.com

**Attorney for Plaintiff**

## UNITED STATED DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Juell, a married individual, | |
| Plaintiff, | Case No. |
| v. | **COMPLAINT** |
| Marin Management Inc., d/b/a DoubleTree by Hilton Tucson – Reid Park, a foreign corporation; | |
| Defendant. | |

For his Complaint, Plaintiff, Michael Juell, alleges,

### THE PARTIES, VENUE AND JURISDICTION

1. Plaintiff, Michael Juell, is a married man suing in his individual capacity, and a resident of Pima County, Arizona.  He was employed in Tucson, Pima County, Arizona by non-party Interstate-Rim Management Company, LLC ("Interstate Rim") d/b/a DoubleTree by Hilton Hotel – Reid Park ("the Hotel") since January, 2014 until he was told on or about July 10, 2017, that he would not be hired by Interstate-Rim's successor-in-interest, Defendant Marin Management, Inc.

2. Defendant Marin Management, Inc., ("Marin") is a California corporation with its principle place of business in Sausalito, California, which does business in

1  Tucson, Pima County, Arizona, managing since about June 21, 2017, as the successor in
2  interest of Interstate-Rim, managing the Hotel, and caused the events to occur in
3  Tucson, Arizona out of which Plaintiff's claims arise.  Marin has no statutory agent
4  listed in Arizona.

5       3.     This is an action seeking relief for the Defendants' failure to honor and
6  interference with Plaintiff's rights under the Family Medical and Leave Act, 29 U.S.C.
7  § 2601et seq.

8       4.     This Court has jurisdiction over the Defendant, and to hear and determine
9  this action and to grant the relief requested pursuant to 29 U.S.C. § 2517.

10      5.     Jurisdiction and venue are proper in this Court.

11 **GENERAL ALLEGATIONS**

12      6.     During his employment with Interstate-Rim from January, 2014 until on
13 or about June 21, 2017, Plaintiff served as a manager of the bar and restaurant known as
14 Javelina Cantina ("the Cantina") at the Hotel.

15      7.     In April, 2017, Plaintiff was scheduled for neck surgery for May 25, 2017,
16 but at the request of Frank Neve, his supervisor who was scheduled to start vacation on
17 May 25, 2017, the surgery was moved to June 8, 2017 to accommodate Neve's
18 vacation.

19      8.     Plaintiff timely notified Interstate-Rim of the need for FMLA, and filed
20 the appropraite paperwork for FMLA leave, and began his leave on or about June 7,
21 2017, and had the surgery as scheduled on June 8, 2017.

22      9.     Plaintiff was the manager of the Cantina when he went on FMLA leave in
23 June, 2017.  There was also a manager of a restaurant within the Hotel called the Cactus
24 Rose, who was Mitch Miller.  These were separate positions, but Plaintiff and the
25 manager of the Cactus Rose also routinely handled the other's duties when the other
26 was absent.

10. Plaintiff was aware that Marin would soon be taking over the management of the Hotel, including the Cactus Rose and Cantina. On information and belief, all employees of Interstate-Rim had to fill out new hire sheets to work for Marin.

11. On or about June 15, 2017, Plaintiff inquired of Kim Norman, ("Norman"), who was then Interstate-Rim's human resources director at the Hotel, if he needed to come in for a group hiring session, and advised that if so, he would have to arrange rides, because he was not yet cleared to drive. Ms. Norman informed him that he should stay home and rest.

12. On information and belief, on or about June 21, 2017, Marin took over management of the Hotel and Cantina.

13. On or about June 27, 2017, Plaintiff met with the Hotel's general manager John Rinella ("Rinella"), an Interstate-Rim employee who was retained by Marin. Plaintiff told Rinella that he expected to return to work on July 18, 2017.

14. At their meeting on June 27, 2017, Rinella told Plaintiff he was looking forward to Plaintiff's return, to relieve the load placed on Cactus Rose manager Mitch Miller. He had Plaintiff sign a waiver that he did not need insurance through Marin (because Plaintiff had insurance through his wife's employment). Rinella told Plaintiff to pick up a new hire packet, which Plaintiff stated he would return as soon as possible, and Rinella said "no rush."

15. On or about June 30, 2017, Plaintiff received a release from his doctor to return to work on July 18, 2017, with some minor lifting and movement restrictions. (See Exhibit 1.)

16. On or about July 3, 2017, Plaintiff returned his new hire packet, passport and medical release to the Hotel.

17. On or about July 10, 2017, Monika Brady ("Brady"), who at that time was human resources coordinator for Marin, and who previously had worked for Interim-Rim in the same capacity, informed Plaintiff by email that his job was being eliminated. The email stated:

> *"Dear Michael,*
>
> *On behalf of Marin Management Company and the DoubleTree by Hilton-Reid Park, I'd like to say thank you for the submission of your application. However, at this time, we are not looking to fill the position of restaurant manager. We will keep your application on file for the future position if and/or when we're looking to refill.*
>
> *I wish you every success in your career and all of your adventures.*
>
> *Best,*
>
> *Monika Brady"*

(See Exhibit 2.)

18. On or about July 17, 2017 Plaintiff called Rinella but he did not answer, so Plaintiff called Brady, who told him that his position was eliminated because he was not at the hiring sessions. Brady told Plaintiff that she was uncomfortable speaking with him and said she was headed to the executive office, where she would give his message to Rinella and would have Rinella call Plaintiff, but Rinella never called Plaintiff back.

19. On or about July 18, 2017, Plaintiff filed for unemployment and was searching online for a new job, when he came across an advertisement for a restaurant/bar manager at the DoubleTree by Hilton Hotel Tucson – Reid Park, obviously posted by Marin. (See Exhibit 3.)

20. The job that he saw posted on July 18, 2017 was the job that Marin told him it had allegedly eliminated.

21. On or about October 19, 2017, Plaintiff received a text from the Cactus Rose manager, Mitch Miller, indicating that a new manager had been hired for the position advertised. Thus, Marin had filled the post at some time prior to that time.

22. Marin operated the Hotel as the same business it was before Marin replaced Interstate-Rim, and thus there was substantial continuity of the same business operations.

23. On information and belief, Marin has operated the Hotel, including the Cantina and Cactus Rose, at the same facilities that preexisted Marin's replacement as manager, providing the same hotel, restaurant and bar services, using the same facilities and workforce as had existed at the end of Interstate-Rim's tenure, retained the same general management team as that under Interstate-Rim, including Rinella as general manager, Neve as director of operations, Miller as manager of the Cactus Rose, Lewis Wilson as banquet manager, Allan Sherman as executive chef, and John Cowley as night manager.

24. The Hotel had more than 50 employees in a 75-mile radius at all times relevant to require it to provide FMLA to Plaintiff, and Interstate-Rim was able to provide relief to Plaintiff under the FMLA and would have been able to provide his return to the same job.

25. Plaintiff, who had been employed for over twelve months when he sought to exercise his FMLA rights in June and July, 2016, had a serious health condition and circumstance for which he was qualified to use FMLA for the period he was out.

26. Marin was a successor-in-interest employers of Plaintiff following his employment with Interstate-Rim pursuant to 29 U.S.C. 2611(4)(A)(ii).

27. Plaintiff was entitled to exercise his FMLA rights in June and July, 2017, with Marin to the same extent as if Interstate-Rim had still been his employer.

28. Plaintiff should either have been restored to the position of employment the held when his leave was commenced, or to be restored to an equivalent position with

1  equivalent employment benefits, pay, and other terms and conditions of employment.  29
2  U.S.C. § 2614(a).

3      29.    Even if Marin eliminated Plaintiff's specific position, it immediately
4  opened up another very similar position to which he should have been placed. To
5  eliminate the position and only immediately open it up again, and not place Plaintiff in it,
6  is an unlawful interference with, restraint, or denial of the exercise of Plaintiff's right
7  under the FMLA.  29 U.S.C. § 2615(a)(1).

8      30.    Defendant retaliated and intentionally discriminated against Plaintiff for
9  taking exercising his FMLA rights, when it told him he could take his time to return the
10 hiring packet while he was on FMLA leave, not telling him he had to be at a particular
11 session, and then using his absence from that session as a basis to fire him or not hire him,
12 while telling him instead the position was eliminated.  Defendant's given reason that his
13 position was eliminated was pretext for Defendant's discriminatory motive, and
14 Plaintiff's absence because of being on FMLA was the determinative effect of the
15 Defendant's decision-making process. This was prohibited by 29 U.S.C. 2615(b).

16     31.    Defendant's act of eliminating the position and then reposting it was a sham
17 to cover up the act of preventing Plaintiff from exercising his rights under the FMLA.

18     32.    Plaintiff has diligently but unsuccessfully attempted to obtain other
19 equivalent employment.

20     **COUNT I**
21     **Interference with FMLA rights**

22     33.    Plaintiff re-alleges and incorporates each and every allegation contained in
23 ¶¶ 1 through 34 as though fully set forth herein.

24     34.    Defendant is the successor-in-interest employers of Plaintiff pursuant to
25 29 U.S.C. 2611(4)(A)(ii).

26     35.    Defendant had a duty to either restore Plaintiff to his former position or to

an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  29 U.S.C. § 2614(a). Defendant terminating Plaintiff's employment and refusing to allow him to return to his job, or to an equivalent position, upon return from leave, was interference with Plaintiff's rights under the FMLA. 29 U.S.C. § 2615(a)(1).

36. Even if Plaintiff's job was eliminated on July 10, 2017, the immediate reposting and filling of it means that it was not eliminated, and not placing Plaintiff in that position was further interference with his FMLA rights.

37. As a direct and proximate result of the foregoing conduct of the Defendant, Plaintiff has suffered injury, including lost wages and benefits starting July 18, 2017 until trial, and interest on the amount awarded, and front pay.

38. Defendant's foregoing acts in interfering with Plaintiff's rights under the FMLA were done intentionally or with reckless disregard of Plaintiff's rights under the FMLA, and therefore Plaintiff is entitled to damages for up to three years following his termination, and liquidated damages in an amount equal to that awarded under paragraph 39 above. 29 U.S.C. § 2617(a).

## COUNT II

### Retaliation/Discrimination

39. Plaintiff re-alleges and incorporates each and every allegation contained in ¶¶ 1 through 40 as though fully set forth herein.

40. Defendant retaliated and discriminated against Plaintiff for exercising his rights under the FMLA when it told him he could take his time to return the hiring packet while he was on leave, not telling him that he had to be at a particular session to reapply, and then using his absence from that session as a basis to fire him or not hire him, while telling him that his position was eliminated, and then posting for and filling the same or similar position, and giving him the reason that his job was eliminated, was

pretext for discriminating against him for using his FMLA.

41. Defendant's discriminatory actions were the determinative effect of its decision making regarding Plaintiff, which was prohibited. 29 U.S.C.§ 2615(b).

42. As a direct and proximate result of the foregoing conduct of the Defendant, Plaintiff has suffered injury, including lost wages and benefits starting July 18, 2017 until trial, and interest on the amount awarded, and front pay.

43. Defendant's foregoing acts of discrimination were done intentionally or with reckless disregard of Plaintiff's rights under the FMLA, and therefore Plaintiff is entitled to damages for up to three years following his termination, and liquidated damages in an amount equal to that awarded under paragraph 39 above. 29 U.S.C. § 2617(a).

## **ATTORNEY'S FEES AND COSTS**

44. Plaintiff is entitled to reasonable attorney's fees and costs and expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3).

## **JURY TRIAL DEMAND**

45. Plaintiff demands a jury trial on all issues raised by the Complaint to which a jury trial is permitted.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Back-pay, front pay, and any other compensation and benefits from Defendant that he lost as a result of their interference with his FMLA rights, and its discrimination against him for invoking those rights.
2. For attorney's fees and costs as permitted by 29 U.S.C. § 2517(a)(3).
3. Any other relief deemed proper by the Court.

/ / /

DATED this 23rd day of January, 2018.

                               LAW OFFICE OF ROGER W. FRAZIER

                               By: /s/  Roger W. Frazier
                               Roger W. Frazier
                               Attorney for Plaintiff